UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                         :

DEMOS P. DEMOPOULOS et al.,              :

                                :            17-CV-5823 (JMF)
                       Plaintiffs,     :

                                :          OPINION AND ORDER
               -v-                      :

                                :

BILLIE LEE WHELAN et al.,            :

                                :

                       Defendants.    :

                                :

------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/25/2017

JESSE M. FURMAN, United States District Judge:

      Plaintiffs Demos P. Demopoulos, Michael Spinelli, and Local 553 of the International

Brotherhood of Teamsters bring claims against Defendants Billie Lee Whelan and Joseph

Libertelli in their capacities as sitting trustees of the Local 803 Pension Fund (the "Pension

Fund") and the Local 803 Health and Welfare Fund (the "Health and Welfare Fund" and,

together with the Pension Fund, the "Funds").  Plaintiffs principally allege that provisions of the

agreements by which the Funds are organized (the "Trust Agreements") improperly entrench the

sitting trustees, in violation of the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 *et seq*., and the Labor Management Relations Act of 1947

("LMRA"), 29 U.S.C. § 141 *et seq.*  Plaintiffs now move, pursuant to Rule 65 of the Federal

Rules of Civil Procedure, to enjoin Defendants "from interfering with the Union's lawful power

to appoint and remove Trustees, from preventing [Demopoulos and Spinelli] from exercising

their duties [as newly appointed Trustees], and from holding themselves out as Trustees of the

Local 803 Funds and exercising authority over such Funds."  (Docket No. 6 ("Pls.' Mem."), at

1).  For the reasons that follow, Plaintiffs' motion is granted in part and denied in part.

1

**BACKGROUND**

The Court assumes familiarity with the facts, which are largely undisputed. (*See* Docket No. 13 ("Defs.' Mem."), at 2 ("[T]he general timeline of events laid out by Plaintiffs is correct . . . .")). The Funds at issue are employee benefit plans belonging to a now-defunct union, Local 803, and maintained to provide retirement, health, and welfare benefits to their beneficiaries, who are current and retired security guards and healthcare workers in the New York City area. (Docket No. 13-1 ("Whelan Aff."), ¶ 11). The Funds are managed by Trustees affiliated with the organizing union (the "Union Trustees") and with contributing employers (the "Employer Trustees"). As a result of mergers in 2007 and 2013, Local 803 was merged into Local 553 (the "Union"), and Local 803 members in good standing became members in good standing of the Union. (*See* Docket No. 5 ("Demopoulos Aff."), ¶¶ 7-17; Whelan Aff. ¶¶ 11-17). The agreements governing the merger (the "Merger Agreements") provided that the Funds would remain separate and distinct from the employee benefit plans offered by Local 553, with Local 553 taking on the power to appoint and remove Trustees subject to certain limitations, some of which are discussed below. (*See* Demopoulos Aff. ¶ 20; Whelan Aff. ¶¶ 12-17).

In February and May 2015, the Trustees for the Health and Welfare Fund voted to adopt an amended and restated Trust Agreement conforming to the restrictions on Trustee appointment and removal provided for in the Merger Agreements. (Demopoulos Aff. ¶¶ 53-66; Whelan Aff. ¶¶ 23-24).[1] Under the terms of both Trust Agreements, as amended, "[n]o individual shall be eligible for appointment as a Union Trustee unless that individual is a current or past participant

---

[1] The parties dispute whether these amendments were validly adopted in accordance with the amendment procedures outlined in the Trust Agreements. (*See* Pls.' Mem. 14-17; Defs.' Mem. 16-19). The validity of the amendments is not relevant to the resolution of this motion, and the Court reserves judgment on the issue.

in the Fund" (the "Participation Provision"). (Docket No. 5-6 ("Pension Trust Agreement"), at 6; Docket No. 5-16 ("Health & Welfare Trust Agreement"), at 5). In addition, both Trust Agreements provide for each Trustee to serve an indefinite term absent "death, incapacity, written resignation served upon the remaining Trustees, or removal as provided herein." (Pension Trust Agreement 5; Health & Welfare Trust Agreement 5). Removal of a Trustee by an appointing authority is permissible only for cause, which the Trust Agreements define to mean "failure to attend more than two consecutive meetings unless excused by bona fide medical reasons, or gross dereliction or disregard of fiduciary responsibilities" (the "Cause Provision"). (Pension Trust Agreement 6; Health & Welfare Trust Agreement 6).

Demopoulos and Spinelli are members of the Union's Executive Board, and Demopoulos is the Principal Executive Officer of the Union. (Demopoulos Aff. ¶ 1). In June 2017, the Local 553 Executive Board (the "Executive Board") sought to replace Defendants, the sitting Union Trustees, with Demopoulos and Spinelli. (Demopoulos Aff. ¶¶ 39-52; Whelan Aff. ¶¶ 25-28). Spinelli contacted the manager for both Funds (the "Fund Manager") to request information regarding Fund bank accounts, but the Fund Manager responded that Defendants were "not comfortable giving out this information," which would be discussed at the next meeting of the Trustees. (Demopoulos Aff. ¶¶ 40-41). After the Executive Board contacted all sitting Trustees to notify them of its intent to install Demopoulos and Spinelli as Union Trustees, Whelan replied that she and Libertelli would not resign and could not be removed absent cause pursuant to the terms of the Cause Provision of the Trust Agreements. (Demopoulos Aff. ¶¶ 42-43; Whelan Aff. ¶¶ 26-27). Plaintiffs twice reached out to the Employer Trustees and to the Fund Manager to arrange a transition meeting and then a Trustees' meeting, but the Employer Trustees and the

Fund Manager did not respond to Plaintiffs' letters or attend the scheduled meetings. (Demopoulos Aff. ¶¶ 44-49; Whelan Aff. ¶ 28).

Believing that the Defendants continue to hold themselves out as Trustees and administer the Funds, Plaintiffs filed the instant suit seeking to remove and replace Defendants with Demopoulos and Spinelli, and moved for a preliminary injunction to that effect. (Pls.' Mem. 3; Demopoulos Aff. ¶ 51). After an initial conference on Plaintiffs' motion, at which both parties were present, the Court approved their joint Stipulation to Enter Temporary Restraining Order, in which Defendants temporarily agreed not to hold any Trustees' meetings, pursue any Trustees' resolutions or other actions, or make any payments out of the Funds' bank account except for reasonable administrative expenses and certain approved benefit payments.

## LEGAL STANDARD

"A party seeking a preliminary injunction must show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011) (internal quotation marks omitted); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act. . . . [A] mandatory injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (citations omitted) (internal quotation marks omitted). In this case, the parties dispute whether Plaintiffs are seeking a

prohibitory injunction or a mandatory injunction.  Although Defendants probably have the better

of the dispute, *see Partenza v. Brown*, 14 F. Supp. 2d 493, 498 (S.D.N.Y. 1998) (Chin, J.)

(treating a nearly identical motion as a motion for a mandatory injunction), the Court need not

and does not resolve it because the outcome would be the same under either standard.

## DISCUSSION

### A.  The Cause Provision

The Court begins with Plaintiffs' challenge to the Cause Provision.  Sections

404(a)(1)(A) and (B) of ERISA "impose three different although overlapping standards" upon

fiduciaries, including trustees of employee benefit funds.  *Donovan v. Bierwirth*, 680 F.2d 263,

271 (2d Cir. 1982); *see also, e.g.*, *Levy v. Local Union Number 810*, 20 F.3d 516, 519 (2d Cir.

1994).  Any fiduciary of an employee benefit plan must "discharge his duties with respect to a

plan solely in the interest of the participants and beneficiaries"; act "for the exclusive purpose of

. . . providing benefits to participants and their beneficiaries[] and . . . defraying reasonable

expenses of administering the plan"; and comport "with the care, skill, prudence, and diligence"

of a prudent person under the circumstances.  29 U.S.C. § 1104(a)(1)(A), (B).  In general, "trust

agreements that excessively protect fund trustees from removal violate [these] fiduciary

mandates of ERISA because they insulate trustees from responsibility for failure to carry out

their fiduciary duties."  *Levy*, 20 F.3d at 519.  That is true "even in the absence of wrongdoing by

particular trustees."  *Partenza*, 14 F. Supp. 2d at 499.  "The test to determine whether unlawful

structural entrenchment exists is whether a fund's governing provisions permit the termination of

their fiduciaries' services on reasonably short notice under circumstances so the plan would not

become locked into an arrangement that may become disadvantageous to the benefit fund."  *Id.*

(internal quotation marks and ellipses omitted).  The governing document of a trust may unduly

entrench the sitting trustees if removal of a trustee is permitted "only upon successfully bringing

such charges as misfeasance or incapacity." *Id.* at 500 (quoting *Levy*, 20 F.3d at 519); *see also*

*Teamsters Local No. 145 v. Kuba*, 631 F. Supp. 1063, 1070 (D. Conn. 1986).

Applying those principles here, the Court concludes that Plaintiffs have made a

substantial showing of likelihood of success on the merits with respect to their claim that the

Cause Provision violates ERISA.  Here, as in *Partenza*, the Trust Agreements provide for each

Trustee to serve an indefinite term absent removal for cause, defined in this case as "failure to

attend more than two consecutive meetings unless excused by bona fide medical reasons, or

gross dereliction or disregard of fiduciary responsibilities."  (Pension Trust Agreement 6; Health

& Welfare Trust Agreement 6).  By its terms, the Cause Provision limits removal to narrowly

delineated circumstances — generally only where a Trustee has blatantly violated his or her

statutory obligations.  Run-of-the-mill disregard of fiduciary responsibilities not rising to "gross

dereliction," not to mention "mere policy disagreement or ineffective leadership," are

insufficient to constitute "cause."  *Partenza*, 14 F. Supp. 2d at 500.  Such a high bar for removal

interferes with the principle of "easy removal on reasonably short notice," and could result in a

situation in which a Trustee might be serving "contrary to the wishes of the Fund's participants

and beneficiaries."  *Id.*  That is impermissible under ERISA.  *See id.*

Defendants contend that the Cause Provision is valid because, unlike in *Partenza*, the

Plaintiffs agreed to the restrictions pursuant to the mergers, and "[i]t is possible the Plaintiffs

considered such provision [sic] to be in the best interests of the plans and their participants and

thus not violative of ERISA."  (Defs.' Mem. 14-16).  Defendants protest that the Plaintiffs "are

asking the court to . . . invalidate the unambiguous terms of" both the Trust Agreements and the

Merger Agreements.  (*See id.* at 14).  But Defendants fail to offer, and the Court cannot imagine,

any reason the Union would have concluded that tying its own hands and restricting its ability to monitor its representatives going forward would be in the best interest of the Funds and their beneficiaries. Additionally, the monitoring requirements and the limitations on entrenchment that make the Cause Provision problematic are *ongoing* obligations imposed by ERISA. Defendants cite no cases to support the proposition that union representatives can negotiate away or otherwise absolve themselves of their continuing fiduciary responsibilities to plan beneficiaries. Thus, Plaintiffs have shown that they are substantially likely to succeed on the merits of their claim that the Cause Provision is unlawful.

Additionally, Plaintiffs have satisfied the other requirements for preliminary injunctive relief with respect to the Cause Provision. As an initial matter, "[c]ontinuance of any trustees serving contrary to the wishes and governing documents of the appointing authority inherently causes irreparable injury." *Int'l Union of Bricklayers & Allied Craftsmen Local No. 5 v. Hudson Valley Dist. Council Bricklayers & Joint Benefit Funds*, 858 F. Supp. 373, 376 (S.D.N.Y. 1994); *see also Partenza*, 14 F. Supp. 2d at 498. Having been deprived of the capacity to "terminate existing fiduciary relationships on reasonably short notice" without needing to show cause, *Partenza*, 14 F. Supp. 2d at 499 (internal quotation marks omitted), the Union has lost its crucial ability to oversee the work of its appointed Trustees and to intervene quickly pursuant to its own fiduciary obligations if it should conclude that a sitting Trustee's actions are not in the best interest of the Funds, *see Liss v. Smith*, 991 F. Supp. 278, 310-11 (S.D.N.Y. 1998) ("The 'limited' fiduciary obligations imposed on one who appoints trustees thus includes [sic] the obligation to ensure that the appointees are performing their fiduciary obligations. . . . The duty to monitor carries with it . . . the duty to take action upon discovery that the appointed fiduciaries are not performing properly.").

In fact, actual harm has already arisen, and will continue to arise, so long as Defendants hold themselves out as the Trustees. The Union has sought to replace Defendants with Trustees of its own choosing, and those attempts have been rebuffed, as have attempts to seek information about bank accounts associated with the Funds. And the parties' Stipulation notwithstanding, Defendants could, absent an injunction, continue to exercise their authority to hold Trustees' meetings, make decisions about the dispositions of Fund resources, and withhold information about the Funds from the Union. In sum, Defendants' continuance as Trustees has already denied the Union the ability to monitor its Trustees' behavior, creating a possibility that the Union will violate its own fiduciary obligations. It also engenders confusion as to the identity of the Union Trustees and thereby risks damaging the reputation of the Union. *See, e.g.*, *Partenza*, 14 F. Supp. 2d at 498-99; *see also United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 938 F. Supp. 1178, 1185 (S.D.N.Y. 1996) ("[H]arm to a union's reputation constitutes irreparable injury." (citing *Int'l Bhd. of Teamsters v. Local Union No. 810*, 19 F.3d 786, 794 (2d Cir. 1994))). This is more than sufficient to constitute a clear showing of irreparable harm.

In arguing otherwise, Defendants contend that Plaintiffs unduly delayed in seeking relief because Defendants were allowed to continue as Union Trustees for years after the mergers. (Defs.' Mem. 20-21). The Union, however, was not required to attempt to remove Defendants as Union Trustees merely because there was an impermissible clause in the Trust Agreements. Until the Union took steps to remove Defendants, the Union was not prevented from monitoring its Trustees in accordance with its fiduciary obligations and, therefore, had suffered no injury. Put another way, the inherent irreparable harm caused by Defendants' continuance as Union Trustees in contravention of the Union's wishes, *see Allied Craftsmen*, 858 F. Supp. at 376, first

arose in July 2017, when the Union attempted to remove and replace Defendants and Defendants informed Plaintiffs of their refusal to step down. The confusion as to the identity of the Union Trustees and the denial to the Union of bank account information similarly occurred in the weeks leading up to the instant action. Because Plaintiffs filed suit immediately after those events, it cannot be said that delay undermines their showing of irreparable harm.[2]

## B. The Participation Provision

Plaintiffs' challenge to the Participation Provision is analytically distinct from their challenge to the Cause Provision and requires little discussion here for a simple reason: Plaintiffs have failed to satisfy their burden of showing that the Provision, if left in place, would inflict irreparable harm (even under the more lenient prohibitory injunction standard). Whereas the Cause Provision plainly entrenches the sitting Trustees, and thus unduly interferes with the Union's fiduciary duties, the Participation Provision merely establishes eligibility requirements for Trustees. Plaintiffs contend that it too runs afoul of the fiduciary mandates of ERISA because it unduly restricts the universe of people who can serve as Trustees. But the record, at this stage of the proceedings, does not support Plaintiffs' contention. They do note that the Health and Welfare Fund has fifty-nine current participants and two contributing employers, while the Pension Fund has only two active participants and one contributing employer. (Demopoulos Aff. ¶¶ 67-68). But the Participation Provision allows for appointment not only of current participants, but also of *past* participants in each Fund — a universe that appears to be much larger (2,000 in the case of the Health and Welfare Fund and 900 in the case of the Pension Fund). (Whelan Aff. ¶¶ 5, 7). In light of that, Plaintiffs have failed to show that leaving the

---

[2]     In light of the foregoing, the Court need not and does not reach Plaintiffs' argument under the LMRA that "[b]y their refusal to step down and allow for their replacement as Funds Trustees, Defendants have breached the Trusts governing the Funds." (Pls.' Mem. 14).

Participation Provision intact is likely to cause them irreparable harm.  As that is a prerequisite to obtaining preliminary injunctive relief, the Court need not reach the remaining factors of the inquiry, including whether Plaintiffs are likely to succeed on the merits of their challenge.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for a preliminary injunction is GRANTED in part and DENIED in part.  Specifically, Defendants are hereby enjoined from holding themselves out as Union Trustees of the Funds or exercising control over the Funds' assets pending resolution of this action.  Any Union Trustees appointed to replace Defendants shall not make any extraordinary expenditures or engage in any extraordinary transactions on behalf of the Funds, or make any further amendments to the Trust Agreements, without Defendants' consent or the prior approval of the Court during the pendency of this suit.

SO ORDERED.

Date:   September 25, 2017
        New York, New York

_____
JESSE M. FURMAN
United States District Judge