UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
LOCAL 553, I.B.T.,                                                      :
                                                                        :
                              Plaintiff,                                :    17-CV-5823 (JMF)
                                                                        :
                   -v-                                                  :    MEMORANDUM OPINION
                                                                        :    AND ORDER
LOCAL 803 PENSION FUND, LOCAL 803 HEALTH                                :
AND WELFARE FUND, SHARIKA GORDON, as                                    :
Trustee of the Local 803 Pension Fund and Health and                    :
Welfare Fund, and WIMAL ARIYAWANSA, as Trustee                          :
of the Local 803 Health and Welfare Fund,                               :
                                                                        :
                              Defendants.                               :
                                                                        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

In this action, general familiarity with which is assumed, Plaintiff Local 553, I.B.T. (the "Union") brings suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, against the Local 803 Pension Fund, the Local 803 Health and Welfare Fund (collectively, the "Funds"), and two individual trustees of the Health and Welfare Fund. *See* ECF No. 42 ("Am. Compl."). The Union seeks a declaratory judgment that two provisions of the agreements that govern the Funds violate ERISA and an order permanently enjoining Defendants from enforcing them. *Id.* at 13-14 (Prayer for Relief). The first of the provisions — the "Cause Provision" — limits the ability to remove a Fund trustee for anything other than "[c]ause," defined, in turn, as the "failure to attend more than two consecutive meetings unless excused by bona fide medical reasons, or gross dereliction or disregard of fiduciary responsibilities." ECF No. 104-13, at 6; ECF No. 104-14, at 6. The second, the "Participation Provision," provides that no person is eligible for appointment as a Fund trustee

"unless that individual is a current or past employee of an employer that contributed on behalf of its employees to" the Funds. ECF No. 104-13, at 6; ECF No. 104-14, at 6. The crux of the Union's argument is that each of these Provisions violates ERISA by unlawfully entrenching the existing trustees, thereby interfering with the exercise of the Union's fiduciary duties.

In an earlier Opinion, the Court granted a preliminary injunction barring Defendants (or, more precisely, their predecessors) from enforcing the Cause Provision, but declined to enjoin enforcement of the Participation Provision. *See Demopoulos v. Whelan*, No. 17-CV-5823 (JMF), 2017 WL 4233081 (S.D.N.Y. Sept. 25, 2017). The Court noted that, under ERISA, an employee benefit plan fiduciary "must 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries'; act 'for the exclusive purpose of . . . providing benefits to participants and their beneficiaries[] and . . . defraying reasonable expenses of administering the plan'; and comport 'with the care, skill, prudence, and diligence' of a prudent person under the circumstances." *Id.* at *2 (quoting 29 U.S.C. § 1104(a)(1)(A), (B)). "In general," the Court explained, "'trust agreements that excessively protect fund trustees from removal violate [these] fiduciary mandates of ERISA because they insulate trustees from responsibility for failure to carry out their fiduciary duties.'" *Id.* (quoting *Levy v. Local Union Number 810*, 20 F.3d 516, 519 (2d Cir. 1994)). "That is true 'even in the absence of wrongdoing by particular trustees.'" *Id.* (quoting *Partenza v. Brown*, 14 F. Supp. 2d 493, 499 (S.D.N.Y. 1998) (Chin, J.)). The relevant test of "whether unlawful structural entrenchment exists is whether a fund's governing provisions permit the termination of their fiduciaries' services on reasonably short notice under circumstances so the plan would not become locked into an arrangement that may become disadvantageous to the benefit fund." *Id.* (internal quotation marks omitted).

To the extent relevant here, the Court applied those standards and held that the Union (or, more precisely, its predecessors) had shown a likelihood of success on the merits with respect to their claim that the Cause Provision violates ERISA. *See id.* at *3. The Court noted that the Cause Provision "limits removal to narrowly delineated circumstances — generally only where a Trustee has blatantly violated his or her statutory obligations" — and that "[r]un-of-the-mill disregard of fiduciary responsibilities not rising to 'gross dereliction,' not to mention 'mere policy disagreement or ineffective leadership,' are insufficient to constitute 'cause.'" *Id.* (quoting *Partenza*, 14 F. Supp. 2d at 500). "Such a high bar for removal," the Court concluded, "interferes with the principle of 'easy removal on reasonably short notice,' and could result in a situation in which a Trustee might be serving 'contrary to the wishes of the Fund's participants and beneficiaries'" — inconsistent with ERISA's dictates. *Id.* (quoting *Partenza*, 14 F. Supp. 2d at 500). By contrast, the Court did not address the merits of the challenge to the Participation Provision because it concluded that the Union's predecessors had "failed to satisfy their burden of showing that the Provision, if left in place, would inflict irreparable harm." *Id.* at *4. The Court acknowledged Plaintiffs' contention that the Participation Provision "runs afoul of the fiduciary mandates of ERISA because it unduly restricts the universe of people who can serve as Trustees," but concluded that "the record," at that time, did "not support Plaintiffs' contention" because the universe of eligible candidates (current and past participants) in each Fund "appear[ed] to be much larger (2,000 in the case of the Health and Welfare Fund and 900 in the case of the Pension Fund)" than Plaintiffs suggested. *Id.*

Now, with discovery over, the parties cross-move for summary judgment with respect to the Union's challenges to the two Provisions.[1] As a threshold matter, Defendants argue that the Court should apply different standards than those set forth in its earlier Opinion. First, they contend that the Court's analysis should focus on whether their "interpretation" of "the terms of the plan's documents" is "arbitrary, capricious, or made in bad faith." ECF No. 122 ("Defs.' Opp'n to Pl. Mot."), at 13. But that standard is incorrect, as the question at issue is whether the trust agreements violate ERISA as a matter of law, not whether Defendants' *interpretation* of those agreements — for instance, a decision to deny a benefits claim pursuant to their terms — is reasonable. *Cf. Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 105, 108-111 (1989) (deciding the appropriate standard of judicial review for challenges to benefit determinations under 29 U.S.C. § 1132(a)(1)(B), but "express[ing] no view as to the appropriate standard of review for actions under other remedial provisions of ERISA"). Along similar lines, Defendants argue that they acted in a nonreviewable settlor function, rather than a reviewable fiduciary function, when they "restate[d] the Trust Agreements" by "amending the plans . . . to define the eligibility of trustees." Defs.' Opp'n to Pl. Mot. 16. But that argument also misses the mark, as the Union's primary argument is not that the *act* of restating the relevant trust agreements was unlawful, but rather that the Cause and Participation Provisions themselves violate ERISA as a matter of law. Thus, the Court need not consider whether the trustees were authorized to amend

---

[1] In addition, the Union moves to strike Defendants' Rule 56.1 Counterstatement and certain evidence. ECF No. 113. Whether or not a motion to strike is filed, "[o]n a motion for summary judgment, a district court may rely only on material that would be admissible at trial." *Rubens v. Mason*, 387 F.3d 183, 189 (2d Cir. 2004). In deciding an evidentiary question, therefore, a court may strike improper evidence or submissions. *See, e.g.*, *Seife v. Food & Drug Admin.*, No. 17-CV-3960 (JMF), 2019 WL 1382724, at *1 (S.D.N.Y. Mar. 27, 2019). "Alternatively, it may, without granting a motion to strike, simply decline to consider" the improper evidence or submissions. *Id.* (internal quotation marks omitted). Here, to the extent the Court needs to reach the Union's arguments at all, it takes the latter approach.

the trust agreements in the first place. Instead, it must evaluate whether the Provisions themselves violate ERISA — an inquiry guided by the standards in the Court's earlier Opinion.

Applying those standards, the Court need not dwell long on the Cause Provision because discovery has merely confirmed what the Court anticipated in its earlier Opinion: that the Cause Provision violates ERISA. All of Defendants' arguments to the contrary are unpersuasive. First, the factual differences between *Partenza* and this case do not render the trust agreements here sufficiently broad to allow for a Trustee's "termination on reasonably short notice," as is required by ERISA. *Levy*, 20 F.3d at 519. Nor is there any merit to Defendants' assertion that the Second Circuit has "found that an indefinite appointment of a fiduciary did not constitute an appointment for life and thus did not run afoul of ERISA[]." Defs.' Opp'n to Pl. Mot. 21 (capitalization omitted). Contrary to that assertion, the Second Circuit has upheld amendments to removal provisions where such amendments "tend[ed] to *reduce*, not increase, the opportunities of employee trustees to entrench themselves." *Int'l Bhd. of Teamsters v. New York State Teamsters Council Health & Hosp. Fund*, 903 F.2d 919, 923 (2d Cir. 1990) (emphasis added) (considering an amendment that both continued existing term limits and expanded the methods through which a trustee could be removed); *see also Liss v. Smith*, No. 95-CV-1256 (HB), 1997 WL 139530, at *2 (S.D.N.Y. Mar. 26, 1997) (observing that a trustee was otherwise removable by a unanimous vote or by a neutral arbitrator). Finally, there is no admissible evidence in the record suggesting that the Union "concluded that tying its own hands and restricting its ability to monitor its representatives going forward would be in the best interest of the Funds and their beneficiaries." *Demopoulos*, 2017 WL 4233081, at *3. Defendants invoke testimony of Joseph Libertelli regarding statements by Fund participants, to the effect that they added the Cause Provision because "[t]hey wanted to make sure people are held accountable,"

ECF No. 119 ("Defs. 56.1 Opp'n"), ¶ 94 (citing ECF No. 104-24, at 86-87), but that testimony is inadmissible hearsay. And in any event, it makes no sense to say that limiting the power to remove a Trustee will serve to increase Trustee accountability. Accordingly, and substantially for the reasons stated in its earlier Opinion, the Court concludes that the Cause Provision constitutes unlawful structural entrenchment and thus violates ERISA as a matter of law.

Although it presents a closer question, the Court now concludes — with the benefit of discovery — that the Participation Provision also interferes with the Union's fiduciary duties and violates ERISA. In particular, discovery has shown that the universe of active and former participants in the Funds is much smaller than appeared at the time of the preliminary injunction proceedings; that participant records are so incomplete and confusing that locating and vetting candidates from that universe would be extraordinarily time-consuming, costly, and non-productive; and that the demographics of the participants make it highly unlikely that they would be willing or able to serve as Trustees. Among other things, the record reveals that:

- Cynthia Socci, the Funds' Administrator for over thirty years, conceded that the data — although complete — was produced in an unfamiliar form and is both "messy and confusing." Defs. 56.1 Opp'n ¶ 175 (internal quotation marks omitted); *see also id.* ¶ 194 ("It's a mess . . . . I'm a little confused with it . . . . [A]s the administrator, I had a hard time — you handed me this, and I'm even struggling with what this is . . . . [I]t doesn't have a title. It doesn't tell me anything. I don't know who prepared it.").

- There are zero active participants in the Pension Fund, and only one of the three Pension Fund documents produced by Defendants, the "Retiree List," purports to contain addresses for former participants. Defs. 56.1 Opp'n ¶¶ 181, 202; ECF No. 104-32 ("Ex. EE"); ECF No. 104-33 ("Ex. FF"); ECF No. 104-34 ("Ex. GG"). Socci, however, did not know when the addresses on the list were last verified. Defs. 56.1 Opp'n ¶¶ 185-86.

- The Pension Fund Retiree List includes approximately 370 retirees, but their entries are mingled with duplicate entries and entries for deceased participants. Defs. 56.1 Opp'n ¶¶ 181-84. Further, there is no address information for former participants who will never receive a pension or for the terminated vested former participants who are entitled to a pension. Defs. 56.1 Opp'n ¶¶ 181, 193; Ex. EE; Ex. FF; Ex. GG.

6

- The vast majority of those on the Pension Fund Retiree List who are still alive (296) are identified as seventy-five years old or older, Defs. 56.1 Opp'n ¶ 190; Ex. GG, and many live outside the tri-state area, Defs. 56.1 Opp'n ¶ 191.[2]

- There are only 56 active participants and 620 former participants in the Health Fund, and the Health Fund does not have verified address information for the former participants. *Id.* ¶ 220; ECF No. 123-25 at 85:13-21. Socci estimates that eighty percent of the addresses of former Health Fund participants are incorrect. Defs. 56.1 Opp'n ¶ 219.

- Of the 620 records listed in the Health Fund census, a substantial number (at least 65) are seventy-five years old or older. Defs. 56.1 Opp'n ¶ 216; ECF No. 104-36.

The net effect of these circumstances and the Participation Provision is that the Union would be forced to "navigate" an "elaborate" and "time-consuming" process to find a new Trustee. *Partenza*, 14 F. Supp. 2d at 501. That, in turn, would undoubtedly chill the Union from replacing a Trustee, even if it was dissatisfied with the Trustee. Put differently, when considered in light of the record, the Participation Provision would not "permit the termination of [the Funds'] fiduciaries' services on reasonably short notice under circumstances so the plan would not become locked into an arrangement that may become disadvantageous to the benefit fund." *Id.* at 499 (internal quotation marks and ellipsis omitted). Thus, although there is nothing inherently unreasonable about these types of "eligibility requirements for Trustees" in the abstract, *Demopoulos*, 2017 WL 4233081, at *4, on the particular facts of this case, the Court concludes that the Participation Provision interferes with the Union's ability to carry out its fiduciary duties in a manner that violates ERISA.

---

[2] Defendants submit a list of "potential Union Trustees taken from the Pension Fund Census for candidates residing in the NYC vicinity," ECF No. 123, in support of the assertion that "there are at least fifty three (53) potential candidates that are deferred vested and reside in the NYC vicinity (5 boroughs, Long Island and Westchester) and have the skill set to become a trustee," Defs' Opp'n to Pl. Mot. 10. The Court declines to consider the list, however, for multiple reasons. First, it was never produced in discovery. Second, it has not been authenticated, by sworn affidavit or otherwise. And third, although some data on the list appears elsewhere in the record (for instance, on the Pension Fund Retiree List), some (most notably, that those on the list "have the skill set to become a trustee") does not.

In short, in the circumstances of this case, the Court concludes that the Union is correct and that both the Cause and Participation Provisions violate ERISA. Thus, the Union is entitled to, and granted, a declaratory judgment to that effect. In addition, it is entitled to, and granted, a permanent injunction enjoining Defendants from enforcing both Provisions. *See, e.g.*, *Roach v. Morse,* 440 F.3d 53, 56 (2d Cir. 2006) ("To obtain a permanent injunction, a plaintiff must succeed on the merits *and* show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." (internal quotation marks omitted and emphasis added)). That is because it plainly lacks an adequate remedy at law and enforcement of the two Provisions has caused, and will continue to cause, the Union irreparable harm by interfering with "its crucial ability to oversee the work of its appointed Trustees and to intervene quickly pursuant to its own fiduciary obligations if it should conclude that a sitting Trustee's actions are not in the best interest of the Funds." *Demopoulos*, 2017 WL 4233081, at *3; *see also Allied Craftsmen*, 858 F. Supp. at 376 (noting that "[c]ontinuance of any trustees serving contrary to the wishes and governing documents of the appointing authority inherently causes irreparable injury").

For the reasons stated above, the Court GRANTS the Union's motion for summary judgment and DENIES Defendants' cross-motion for summary judgment. (Additionally, the Union's motion to strike and motion to amend, *see* ECF No. 124 at 24 n.26, are also denied as moot.) **No later than one week from the date of this Opinion and Order**, the Union shall confer with Defendants and submit a proposed Judgment consistent with this Opinion and Order.

The Clerk of Court is directed to terminate ECF Nos. 98, 113, and 121.

SO ORDERED.

Dated: September 13, 2019
New York, New York

JESSE M. FURMAN
United States District Judge